[Cite as *Crane v. Ohio Adult Parole Auth.*, 2023-Ohio-3031.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Steven H. Crane, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 23AP-117 |
| v. | : | (C.P.C. No. 22CV-6157) |
| Ohio Adult Parole Authority, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on August 29, 2023

**On brief:** *Steven H. Crane*, pro se.

**On brief:** *Dave Yost*, Attorney General, and *D. Chadd McKitrick*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Plaintiff-appellant, Steven H. Crane, appeals, pro se, from the January 26, 2023 judgment of the Franklin County Court of Common Pleas dismissing his civil action against defendant-appellee, the Ohio Adult Parole Authority ("OAPA"), for lack of subject-matter jurisdiction pursuant to Civ.R. 12(B)(1). For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL OVERVIEW

{¶ 2} In 1985, a Franklin County jury found Mr. Crane guilty of aggravated murder and aggravated robbery in Franklin County Court of Common Pleas case No. 84CR-335. He is currently serving the life tail imposed for his aggravated murder conviction at an institution operated by the Ohio Department of Rehabilitation and Correction ("ODRC").[1]

---

[1] Ohio Department of Rehabilitation and Correction, *Offender Details: Inmate No. A186327*, https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A186327 (accessed Aug. 28, 2023.)

As previously determined by the Ohio Parole Board ("parole board"), a section within the OAPA, Mr. Crane became eligible for parole in January 2003. (*See* Sept. 7, 2022 Notice of Appeal at 6.)

{¶ 3} On June 15, 2022, Mr. Crane appeared before the parole board for a parole hearing. (*See* Sept. 7, 2022 Notice of Appeal at 6.) The parole board's "Decision and Minutes"—which constitute the "official public record of the decisions of the parole board," *see* Ohio Adm.Code 5120:1-1-01(N)—indicate the parole board denied him release from incarceration to parole and continued the matter until May 1, 2025, thus ruling that Mr. Crane must serve 35 additional months in prison before his next parole hearing. (*See* Sept. 7, 2022 Notice of Appeal at 6-7.) Its decision was validated by the parole board chair on June 21, 2022.[2] (Sept. 7, 2022 Notice of Appeal at 7.)

{¶ 4} Incarcerated individuals who are denied parole may request reconsideration of a parole hearing decision pursuant to ODRC Policy 105-PBD-04.[3] *See, e.g.*, *State ex rel. Townsend v. Mohr*, 10th Dist. No. 15AP-681, 2016-Ohio-5942, ¶ 6; *State ex rel. Semenchuk v. Ohio Adult Parole Auth.*, 10th Dist. No. 19AP-361, 2019-Ohio-4641, ¶ 5. Such requests "must be submitted in writing to the Parole Board" and "must be based on, and specifically refer to, relevant and significant new information that was either not available or not considered at the time of the hearing or credible information indicating that incorrect or inaccurate information considered by the Parole Board at the hearing adversely affected the individual's parole consideration." ODRC Policy 105-PBD-04(VI)(A)(1). Of note, ODRC Policy 105-PBD-04 imposes no specific time limitation on when a reconsideration request must be submitted to the parole board. *See id.* The only timing requirement is that a written request for reconsideration must be submitted to the parole board "within a reasonable time after the new information becomes available." *Id.*

---

[2] The trial court and state both refer to a June 6, 2015 decision from the parole board denying Mr. Crane's release from incarceration to parole. (*See, e.g.*, Brief of Appellee at 3; Jan. 26, 2023 Order and Entry at 1; Oct. 7, 2022 Mot. to Dismiss at 2.) We believe this to be a scrivener's error, however. The parole board decision attached to Mr. Crane's September 7, 2022 filing that initiated the case below in the trial court shows a June 15, 2022 hearing date and a June 21, 2022 validation date. (Sept. 7, 2022 Notice of Appeal at 6-7.)

[3] Ohio Department of Rehabilitation and Correction, *Request for Reconsideration and Amendments to Parole Board Actions 105-PBD-04 (Effective 7/15/2021)*, https://drc.ohio.gov/about/resource/policies-and-procedures/105-pbd-parole-board/request-for-reconsideration-and-amendments-to-parole-board-actions (accessed Aug. 28, 2023).

{¶ 5} At the outset, we note that nothing in the record before us indicates Mr. Crane submitted a reconsideration request to the parole board in the manner required by ODRC Policy 105-PBD-04. Instead, Mr. Crane attempted a direct "administrative appeal" from the parole board's June 2022 decision to the common pleas court "pursuant to R.C. 2506.01" and/or Chapter 119 of the Ohio Revised Code. (*See* Sept. 7, 2022 Notice of Appeal at 1.)

{¶ 6} On September 7, 2022, Mr. Crane filed, pro se, a document captioned as "Notice of Appeal Pursuant to R.C. 2506.01" in the trial court. He attached to it a copy of the parole board's June 2022 decision denying him release from incarceration to parole. (Sept. 7, 2022 Notice of Appeal at 6-7.) Generally, Mr. Crane alleged that, by continuing his incarceration, the OAPA violated his constitutional rights, acted contrary to law, and exceeded the scope of its jurisdictional authority. He also took issue with the parole board's delay in delivering its decision to Mr. Crane. Although not expressly averred in the September 7th pleading itself, its attachment contains handwriting—presumably, Mr. Crane's—asserting that Mr. Crane did not receive a copy of the parole board's decision until July 8, 2022, i.e., 18 days after it was validated by the chair. (*See* Sept. 7, 2022 Notice of Appeal at 6.) Mr. Crane apparently believed he was required to submit a reconsideration request to the chair "within 10-days [sic]" (Sept. 7, 2022 Notice of Appeal at 5) but, as explained above, ODRC Policy 105-PBD-04 does not impose any set time limitation.

{¶ 7} On October 7, 2022, the OAPA moved to dismiss Mr. Crane's complaint under Civ.R. 12(B)(1) and 12(B)(6). It contended that a trial court does not have subject-matter jurisdiction to review an "administrative appeal" from a decision of the parole board or the OAPA denying release. Thus, the OAPA posited that dismissal under Civ.R. 12(B)(1) was required. In the alternative, the OAPA argued Mr. Crane's civil action should be dismissed under Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted.

{¶ 8} Although Mr. Crane filed his written opposition to the City's motion on October 25, 2022, he did not make any arguments against dismissal under the applicable legal standards. Instead, Mr. Crane contended the OAPA's motion to dismiss was "premature" because "the complaint has not been filed yet, only the notice of appeal and

the motion for leave to file delayed appeal."[4]  (Oct. 25, 2022 Memo Contra at 1.)  The next day, Mr. Crane filed a document styled as a "complaint" in the trial court raising constitutional, jurisdictional, and contractual issues in connection with the OAPA's June 2022 decision denying him release from incarceration to parole. (*See* Oct. 26, 2022 Compl.)

{¶ 9}   On January 26, 2023, the trial court issued a decision and entry granting the OAPA's motion to dismiss pursuant to Civ.R. 12(B)(1) and ordered dismissal of the case for lack of subject-matter jurisdiction.[5]   It did not address the OAPA's arguments under Civ.R. 12(B)(6).

{¶ 10} Mr. Crane timely appealed from the trial court's January 26, 2023 judgment and asserts a sole assignment of error for our review:

> THE TRIAL COURT ABUSED ITS DISCRETION IN CLAIMING IT DID NOT HAVE JURISDICTION TO HEAR AN APPEAL UNDER R.C.[]2506.01 OVER QUASI-JUDICIAL PROCEEDINGS. IS CONFESSED CRIMINAL ACTIVITY BY DEFENDANTS ENOUGH TO OVERRIDE ANYTHING ELSE AND GRANT RELIEF.

## II. LEGAL ANALYSIS

{¶ 11} In his sole assignment of error, Mr. Crane argues the trial court erred in finding it lacked subject-matter jurisdiction over his "appeal" from the parole board's June 2022 decision denying him release, granting the OAPA's motion to dismiss pursuant to Civ.R. 12(B)(1), and dismissing the civil action below.

### A. Applicable Law and Standard of Review for Civ.R. 12(B)(1) Dismissals

{¶ 12} The issue of subject-matter jurisdiction concerns " 'a court's power to hear and decide a case on the merits and does not relate to the rights of the parties.' " *Robinson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 10AP-550, 2011-Ohio-713, ¶ 5, quoting *Vedder v. Warrensville Heights*, 8th Dist. No. 81005, 2002-Ohio-5567, ¶ 14.

{¶ 13} Civ.R. 12(B)(1) allows parties to move for dismissal based on a trial court's "[l]ack of jurisdiction over the subject matter" of a case.  In ruling on a Civ.R. 12(B)(1)

---

[4] We note, however, that a "motion for leave to file delayed appeal" is not in the record before us.

[5] Before and after the trial court's final judgment was entered on January 26, 2023, Mr. Crane filed other motions and documents in the case below. Because we find they are not relevant to the issues before us on appeal, we do not address them.

motion to dismiss for lack of subject-matter jurisdiction, a trial court must determine "whether any cause of action cognizable by the forum has been raised in the complaint." *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80 (1989), citing *Avco Fin. Servs. Loan, Inc. v. Hale*, 36 Ohio App.3d 65, 67 (10th Dist.1987). *See also Duff v. Ohio Adult Parole Auth.*, 10th Dist. No. 16AP-851, 2017-Ohio-8895, ¶ 5. To do this, a trial court may consider any pertinent materials and is not confined to the allegations in the complaint. *Southgate Dev. Corp. v. Columbia Gas Transmission Corp.*, 48 Ohio St.2d 211 (1976), paragraph one of the syllabus.

{¶ 14} Appellate review of a trial court's decision to dismiss a case pursuant to Civ.R. 12(B)(1) is de novo. *Robinson* at ¶ 5, citing *Hudson v. Petrosurance*, 10th Dist. No. 08AP-1030, 2009-Ohio-4307, ¶ 12. *See also State ex rel. Ohio Civ. Serv. Emps. Assn. v. State of Ohio*, 146 Ohio St.3d 315, 2016-Ohio-478, ¶ 12. "De novo review means that we apply the same standards as the trial court." *Neinast v. Ohio Expositions Comm.*, 10th Dist. No. 09AP-349, 2009-Ohio-4850, ¶ 5, citing *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, ¶ 16 (2d Dist.)

### B. Analysis

{¶ 15} Mr. Crane commenced the case below against the OAPA by filing a "notice of appeal" in the trial court "pursuant to R.C. 2506.01 and/or [Chapter] 119 [of the Ohio Revised Code]." (Sept. 7, 2022 Notice of Appeal at 1.) Mr. Crane sought to frame his cause of action as one not seeking to be immediately released from prison or attacking the substantive basis of its June 2022 decision, but instead as generally challenging the parole board's authority or ability to make its parole determinations concerning Mr. Crane. (*See* Sept. 7, 2022 Notice of Appeal at 1.) The trial court found the root of Mr. Crane's action was his attempt to commence a direct "appeal" in the trial court from the parole board's June 2022 decision denying him release from incarceration to parole. (*See* Jan. 26, 2023 Order and Entry at 1-2.)

{¶ 16} In moving the trial court to dismiss the case, the OAPA contended that neither R.C. 2506.01 nor Chapter 119 conferred jurisdiction upon the trial court to consider Mr. Crane's appeal from the parole board's decision. (Oct. 7, 2022 Mot. to Dismiss. *See also* Oct. 31, 2022 Reply.) Accordingly, the OAPA argued dismissal of Mr. Crane's civil action was warranted pursuant to Civ.R. 12(B)(1).

{¶ 17} The trial court agreed. Although ultimately concluding it lacked jurisdiction to consider Mr. Crane's appeal under both R.C. 2506.01 and Chapter 119, the trial court's analysis primarily focused on the latter. (*See* Jan. 26, 2023 Order and Entry at 3-4.) On that point, we note that R.C. 2506.01 authorizes a court of common pleas to review a final decision from an agency of a political subdivision. *See, e.g., Gerst v. Ohio Dept. of Transp.*, 10th Dist. No. 21AP-65, 2022-Ohio-86, ¶ 8; *Hennings v. State Personnel Bd. of Rev.*, 11th Dist. No. 2022-T-0013, 2022-Ohio-4252, ¶ 10-20. In contrast, R.C. 119.12 confers subject-matter jurisdiction on a trial court over an appeal from a decision rendered by a state agency. *See id.*

{¶ 18} On appeal, Mr. Crane generally takes issue with the trial court's decision to grant the OAPA's motion to dismiss his complaint pursuant to Civ.R. 12(B)(1). He does not, however, make any arguments under the applicable law or controlling standard of review. Instead, he challenges the propriety of the parole board's hearing process by generally asserting its members engage in criminal, unethical, unfair, unprofessional, and immoral behavior during parole hearings and its review process. (Brief of Appellant at 4-6, 8-10.) However, due to the procedural nature of the decision from which Mr. Crane has appealed to this court, the merits of his substantive claims are not before us on appeal.

{¶ 19} The balance of Mr. Crane's brief is devoted to contesting the trial court's finding that R.C. 2506.01 does not apply to his "appeal" from a decision pertaining to parole. (Brief of Appellant at 3-4, 7-8, 10-11.) Of note, Mr. Crane does not challenge the trial court's conclusion that Chapter 119, which governs administrative appeals of state agency decisions, does not apply in this case. In fact, after the trial court entered its final judgment on January 26, 2023, but before he filed his notice of appeal to this court, Mr. Crane expressly disclaimed Chapter 119's applicability to his September 7th "notice of appeal," asserting it was "immaterial to the issues at hand." (Feb. 2, 2023 Resp. at 1.) Accordingly, for purposes of this appeal, we limit our analysis to determining whether R.C. 2506.01 gave the trial court jurisdiction to consider Mr. Crane's "appeal" from the parole board's June 2022 decision denying him release.

{¶ 20} R.C. 2506.01(A) provides that "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other ***division of any political subdivision of the state*** may be reviewed by the court of common

pleas of the county in which the principal office of the political subdivision is located."
(Emphasis added.) A decision by an authority of a political subdivision is not directly
appealable to a common pleas court pursuant to R.C. 2506.01 unless it is a "final" decision
not reviewable upon hearing by a higher administrative authority. R.C. 2506.01(A), (C).
But even then, "R.C. 2506.01 provides for appeals only from quasi-judicial proceedings,
which require notice, hearing, and the opportunity for introduction of evidence." *State ex
rel. Painesville v. Lake Cty. Bd. of Commrs.*, 93 Ohio St.3d 566, 571 (2001), citing *State ex
rel. Dublin v. Delaware Cty. Bd. of Commrs.*, 62 Ohio St.3d 55, 60-61 (1991).

{¶ 21} On appeal, Mr. Crane maintains that the trial court had jurisdiction to review
the parole board's decision pursuant to R.C. 2506.01. The primary focus of his brief is his
argument that parole board hearings are "quasi-judicial" proceedings. (Brief of Appellant
at 3-4, 7-8, 10-11.) But, assuming that is true, Mr. Crane does not explain how (or why)
R.C. 2506.01(A) applies to a decision of the parole board. Most pointedly, he does not
contend the OAPA or the parole board are "division[s] of any political subdivision of the
state" within the meaning of R.C. 2506.01(A). In any event, and notwithstanding the lack
of argument under the controlling legal authority, we review—and affirm—the trial court's
dismissal of Mr. Crane's civil action under Civ.R. 12(B)(1).

{¶ 22} Fatal to Mr. Crane's arguments on appeal is our ultimate determination that
neither the OAPA, the parole board, nor the ODRC are agents of a "political subdivision of
the state." *See* R.C. 2506.01(A).

{¶ 23} There is little authority as to what "political subdivision" actually means and
encompasses within the narrow context relevant to this case. Indeed, the General Assembly
has variously defined the term "political subdivision" for different purposes, but generally
to mean "a municipal corporation, township, county, school district, or other body
corporate and politic responsible for governmental activities only in geographic areas
smaller than that of the state." *See, e.g.*, R.C. 9.314(A)(2); R.C. 2744.01(F); R.C.
3905.36(D). *See also* R.C. 3501.01(T); R.C. 5713.081(C); R.C. 6101.01(C).

{¶ 24} In *Wolf v. Columbus*, 98 Ohio App. 333, 335 (10th Dist.1954), we noted that
while these different statutory definitions "have application only to laws in the chapters
wherein they are found, they are helpful in determining what the legislative body
understood the terms to ordinarily mean." Such definitions were particularly helpful in

*Wolf*, where we found a city to be a political subdivision of the state by noting that "cities" have invariably been included in "political subdivision" definitions throughout the Revised Code. *Id.* at 334-36. Conversely, the General Assembly has never included the ODRC, OAPA, or the parole board within the statutory definition of "political subdivision."

{¶ 25} We have previously concluded that, as used in R.C. 2506.01,

> A political subdivision of the state is a geographic or territorial division of the state rather than a functional division of the state. Almost invariably the statutory definitions of "political subdivision" involve a geographic area of the state which has been empowered to perform certain functions of local government within such geographic area. Accordingly, a "political subdivision of the state" is a geographic or territorial portion of the state to which there has been delegated certain local governmental functions to perform within such geographic area.

*Fair v. School Emps. Retirement System*, 44 Ohio App.2d 115, 119 (10th Dist.1975). In other words, "the term 'political subdivision' does not include the state of Ohio or its agencies; therefore, R.C. 2506.01 could not provide for appeals" from such agencies. *S. Community, Inc. v. State Emp. Relations. Bd.*, 38 Ohio St.3d 224, 227 (1988). *See also Gerst*, 2022-Ohio-86 at ¶ 8.

{¶ 26} The parole board is a section within the OAPA, and the OAPA is a section within the Division of Parole and Community Services ("DPCS"). R.C. 5149.02. The DPCS is the community corrections division of the ODRC. *See* R.C. 5120.06(A)(2). The ODRC is an administrative department of the State of Ohio. R.C. 121.02(P).

{¶ 27} The OAPA is an administrative unit of the ODRC that "consists of its chief, a field services section, and a parole board." R.C. 5149.02. It is the ***state agency*** empowered to grant and revoke the parole of individuals incarcerated in state institutions. *See, e.g., State ex rel. Kirkland v. Ohio Adult Parole Auth.*, 10th Dist. No. 05AP-1292, 2006-Ohio-6218, ¶ 19; *State ex rel. Spann v. Mitchell*, 11th Dist. No. 97-T-0102, 1997 Ohio App. LEXIS 5334, *1 (Nov. 28, 1997).

{¶ 28} Based on the foregoing, we conclude the ODRC, the OAPA, and the parole board are not agencies of a political subdivision of this state; rather, they are state agencies. *See, e.g., Ellis v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-354, 2020-Ohio-6877, ¶ 26. This is because they are "instrumentalit[ies] of the state exercising [their] powers and

duties throughout the state, not solely within a geographical subdivision of the state." *Fair*, 44 Ohio App.2d at 119. We therefore conclude the OAPA is not a "tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state," within the meaning of R.C. 2506.01(A), whose "final order, adjudication, or decision" "may be reviewed by the court of common pleas." R.C. 2506.01(A).

{¶ 29} Because R.C. 2506.01(A) did not give the trial court jurisdiction to consider Mr. Crane's "appeal" from the parole board's decision, we find the trial court did not err in granting the OAPA's motion to dismiss pursuant to Civ.R. 12(B)(1) and dismissing the civil action below. Accordingly, we overrule Mr. Crane's sole assignment of error.

## III. CONCLUSION

{¶ 30} Having overruled Mr. Crane's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER and MENTEL, JJ., concur.

––––––––––––